WINSTON P. HSIAO (SBN 273638)
winston.hsiao@skadden.com
RYNE C. POSEY (SBN 301981)
ryne.posey@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2000 Avenue of the Stars, Suite 200N
Los Angeles, CA 90067
Telephone: (213) 687-5000
Facsimile: (213) 687-5600

MICHAEL S. HINES (*pro hac forthcoming*)
michael.hines@skadden.com
CHRISTOPHER G. CLARK (*pro hac forthcoming*)
christopher.clark@skadden.com
CATHERINE A. FISHER (*pro hac forthcoming*)
catherine.fisher@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
Telephone:  (617) 573-4800
Facsimile: (213) 573-4822

*Attorneys for Plaintiffs ACRISURE, LLC, and ACRISURE OF CALIFORNIA, LLC*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACRISURE, LLC, a Michigan limited liability company, and ACRISURE OF CALIFORNIA, LLC, a Michigan limited liability company,<br><br>                    Plaintiffs,<br><br>          v.<br><br>ANTHONY CIFANI, an individual, NICOLAS CIFANI, an individual, MARNIE HILL (MCCALL), an individual, AUSTIN DEVONE, an individual, JULIE RITENOUR, an individual, and FERNANDA SANCEAU (WHITE), an individual.<br><br>                    Defendants. | CASE NO.:<br><br>ACRISURE'S COMPLAINT FOR:<br><br>(1)   Breach Of Contract<br>(2)   Breach Of Loyalty<br>(3)   Conversion<br>(4)   Breach Of Contract: Nondisclosure Of Confidential Information<br><br><u>DEMAND FOR JURY TRIAL</u><br><br>Complaint Filed:  May 5, 2026 |

Plaintiffs Acrisure, LLC, and Acrisure of California, LLC (together, "Acrisure"), by and through their attorneys Skadden, Arps, Slate, Meagher & Flom LLP, state their Complaint against Defendants Anthony Cifani, Nicolas Cifani, Austin Devone, Marnie Hill (McCall), Julie Ritenour, and Fernanda Sanceau (White) (together, "Defendants"), upon personal knowledge with respect to Acrisure and its own acts, and upon information and belief as to all other matters, as follows:

## INTRODUCTION

1.     This action concerns Defendants' breach of their duty of loyalty and employment agreements to their former employer Acrisure.  While Defendants were employed by, being paid by and obligated to work for the exclusive benefit of Acrisure's Benefits Exchange Insurance ("BXA") group, Defendants secretly colluded to work for the benefit of a directly competing company called BXAGlobal Insurance Services, Inc. ("NEWCo BXA").

2.     By working for the benefit of a direct competitor and stealing Acrisure's confidential information, physical property, and intellectual property—all during their employment with Acrisure—Defendants have, at the very least, (a) breached multiple provisions of their Employment Agreements, dated January 2, 2018 (Anthony Cifani); January 2, 2018 (Nicolas Cifani); October 1, 2026 (Marnie Hill (McCall)); September 26, 2016 (Austin Devone); August 7, 2023 (Julie Ritenour); and October 1, 2016 (Fernanda Sanceau (White)), each entered into with Acrisure of California, LLC, (the "Employment Agreements"); (b) breached their duty of loyalty by working for NEWCo BXA while employed by, paid by and ostensibly working for the exclusive benefit of Acrisure; and (c) converted Acrisure's valuable information and property, together and with other Acrisure employees, for personal gain and for the benefit of a direct competitor.

3.     Acrisure has suffered economic harm by, among other things, paying Defendants' salaries and investing in Defendants' development, while Defendants

actively undermined Acrisure's interests and stole Acrisure's property in violation of their contractual obligations to Acrisure and the law.

## PARTIES

4.     Plaintiff Acrisure, LLC is a Michigan limited liability company and its sole member is Acrisure Intermediate, Inc.  Acrisure Intermediate, Inc. is a Delaware corporation with its principal place of business in Michigan.  Acrisure, LLC is a citizen of Delaware and Michigan.

5.     Plaintiff Acrisure of California, LLC is a limited liability company with its principal place of business in Michigan.  Acrisure of California, LLC is a Michigan limited liability company and its sole member is Acrisure, LLC.  Acrisure of California, LLC is a citizen of Delaware and Michigan.

6.     Defendant Anthony Cifani is an individual who, upon information and belief, is a citizen of California.

7.     Defendant Nicolas Cifani is an individual who, upon information and belief, is a citizen of California.

8.     Defendant Marnie Hill (McCall) is an individual who, upon information and belief, is a citizen of California.

9.     Defendant Austin Devone is an individual who, upon information and belief, is a citizen of California.

10.     Defendant Julie Ritenour is an individual who, upon information and belief, is a citizen of California.

11.     Defendant Fernanda Sanceau (White) is an individual who, upon information and belief, is a citizen of California.

## JURISDICTION AND VENUE

12.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties, and the

amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. Defendants are citizens of California. Plaintiffs Acrisure, LLC and Acrisure of California, LLC are citizens of Michigan and Delaware.

13. This Court has personal jurisdiction over Defendants because each are citizens of California and worked for Acrisure in California. In addition, Defendants' intentional acts at issue in this Complaint caused injury to Plaintiffs in California, where Acrisure operates.

14. Venue in this district is proper pursuant to 28 U.S.C. § 1391. Venue in this district is proper because Defendants reside in this Court's district.

## STATEMENT OF FACTS

### Acrisure Is A Global Fintech Leader Providing
### Financial Services In The Highly Competitive Insurance Brokerage Industry

15. Acrisure is a global fintech leader based in Grand Rapids, Michigan, that provides intelligence-driven financial services solutions across many industries, including the insurance brokerage industry. Acrisure has offices throughout the United States.

16. The insurance brokerage industry is highly competitive in terms of maintaining customers and accounts, making the marketing of an insurance brokerage services critical to success.

17. Acrisure's ability to address its customers' unique needs begins with trust through its brand reputation and goodwill. Acrisure spends significant time and money developing and maintaining its brokerage footprint, including through its agency, brand and affiliate names (such as BXA).

18. Reputations and customer relationships in the insurance brokerage marketplace are cultivated over years and, once established, often last for extended periods.

19.    As such, Acrisure makes significant investments to acquire, build, and maintain its image and reputation with its customer base and customer relationships, including investments in goodwill, business reputation, and brand.

20.    In conducting its business, Acrisure develops and maintains confidential and proprietary information that is essential to its success.  Acrisure's confidential and proprietary information includes, among other things, customer lists, pricing information, underwriter and insurance carrier relationships and agreements, renewal dates, specific coverages, and an understanding of customer-specific preferences, which are unique to each customer.  This information is a protectable interest that belongs to Acrisure.

21.    To protect its confidential and proprietary information from unauthorized disclosure, Acrisure takes a variety of measures.  Acrisure protects its confidential and proprietary information by password protecting its computers, network, and other databases; restricting access to certain databases or information so that only those personnel who require the information can access it; restricting access to its facilities, and alarming those premises; requiring employees and consultants to sign consultant or employment agreements which contain confidentiality and proprietary rights clauses; requiring that all employees and consultants return all confidential and proprietary information upon termination of their employment or consulting relationship; requiring confidentiality from employees with respect to Acrisure's confidential and proprietary information, and training employees and consultants regarding their obligations with respect to Acrisure's confidential and proprietary information.

22.    Acrisure's confidential and proprietary information is extremely valuable to Acrisure.

23.    A competitor's access to and use of Acrisure's confidential and proprietary information results in an unfair competitive advantage by allowing that

ACRISURE'S COMPLAINT
5

competitor to more effectively target particular customers, for particular products or services, at a different price or based on different coverages.

### In 2016, Acrisure Purchases BXA's Operations And Assets

24.     In 2016, Acrisure purchased substantially all of BXA's operations and assets, as well as all related goodwill.

25.     Since Acrisure purchased BXA in 2016, Acrisure has invested in, developed, and continuously held itself out as providing insurance brokerage and consulting services under "BXA" and "BXA" formative names and branding in all of the traditional channels of trade, including online and through professional social media platforms (e.g., LinkedIn).

26.     Acrisure invested money and resources in the employees who worked in its BXA group. Acrisure invested significant time, money, and effort to integrate BXA customers and employees into Acrisure of California. Acrisure aspired to not only fully integrate BXA employees in Acrisure, but also to make each of them feel welcomed as a part of the new Acrisure-BXA team.

27.     For example, Acrisure established personnel and logistics support for Acrisure's BXA group, including payroll and benefits. Acrisure's regulatory affairs and licensing department ensured that the insurance professionals were properly licensed and affiliated under the appropriate Acrisure license.

### Defendants Agree To Confidentiality And Exclusive Rights Covenants In Their Employment Agreements

28.     Defendants each entered into Employment Agreements with Acrisure pursuant to which they worked for Acrisure as well-compensated employees for multiple years.

29.     On January 2, 2018, Defendant Anthony Cifani began working at Acrisure as a Producer.

30. On January 2, 2018, Defendant Nicolas Cifani began working at began working at Acrisure as a Producer.

31. On September 26, 2016, Defendant Austin Devone began working at Acrisure as an Analyst.

32. On October 1, 2016, Defendant Marnie Hill (McCall) began working at Acrisure as a Marketing Consultant.

33. On August 7, 2023, Defendant Julie Ritenour began working at Acrisure as an Account Manager.

34. On October 1, 2018, Defendant Fernanda Sanceau (White) began working at Acrisure as an Account Manager.

35. Pursuant to their Employment Agreements, Defendants each agreed to provide services exclusively to Acrisure and not—as they wrongfully did—for the benefit of any other insurance agency. Section 3 of each of their Employment Agreements (the "Exclusive Agreement Covenant") reads as follows:

> **Exclusive Agreement.** Employee shall devote his/her full time and effort to securing and servicing business for the Company's benefit while in the Company's employ. Among other Agreement obligations imposed, Employee shall not place any business, directly or indirectly, with any person or entity other than the Company without the Company's prior written consent, nor be involved financially or otherwise with any active insurance agency or other business of a type conducted by the Company, or similar enterprise.

36. Defendants each agreed not to disclose confidential information that belongs to Acrisure. Section 8 of each of their Employment Agreements reads as follows:

> **Nondisclosure of Confidential Information.** Employee will have access to confidential information about the Company and/or its Affiliated Entities (as defined in Section 10 below) (the "Confidential Information"), including, without limitation, information about the Company's or Affiliated Entities'

operations, processes, procedures, trade secrets, agent lists, adjuster lists, rating techniques, rates, coverage, accounting rules, employee information, insurance companies, computer techniques, marketing techniques, advertising techniques, know-how, finances, business plans, costs, pricing, sales, customer lists, the needs and demands of customers, and vendor lists, including lists and contacts with insurance companies.  In addition, Employee will develop other information that the Company and its Affiliate Entities consider to be Confidential Information. Employee will not, directly or indirectly, disclose, furnish, or make available, except in the course of performing Employee's duties of employment under this Agreement, any Confidential Information (regardless of how Employee learned of it or who developed it), without the Company's prior written approval. These restrictions concerning Confidential Information shall remain in effect following termination of this Agreement or termination of Employee's employment with the Company, without limitation.

37.     Pursuant to Section 18 of Anthony Cifani and Nicolas Cifani's Employment Agreements and Section 15 of Julie Ritenour's Employment Agreement, each agreed that California law governs their agreements.

38.     Pursuant to Section 18 of Marnie Hill (McCall)'s Employment Agreement and Section 15 of Fernanda Sanceau (White) and Austin Devone's Employment Agreements, each agreed that Michigan law governs their agreements.

**While Employed By And Paid By Acrisure
Defendants Misappropriate Acrisure Resources And Property**

39.     Acrisure recently learned that while Defendants were employed by and paid by Acrisure, they were secretly and unlawfully misusing Acrisure resources for the benefit of NEWCo BXA.

40.     NEWCo BXA was recently formed by former Acrisure consultant Adam DeVone.

41.     NEWCo BXA is a direct competitor of Acrisure because it purports to provide the same services to the same prospective customers.

42. On information and belief, Defendants worked with other Acrisure employees—while employed by and being paid by Acrisure—to create NEWCo BXA using Acrisure's computer network, Acrisure email addresses, and Acrisure's licensed software.

43. On information and belief, Defendants also held in-person meetings at Acrisure's offices to discuss the formation of the competing business using Acrisure's resources for their own benefit, including by diverting the time and attention of Acrisure's employees from Acrisure's business.

**Defendants Violate Their Exclusive Agreement Covenant By Aiding NEWCo BXA While Working For And Being Paid By Acrisure**

44. Defendants took substantial steps to assist in the creation of NEWCo BXA, including during business hours, while being paid by Acrisure.

45. Upon information and belief, Defendants, during business hours and while employed by Acrisure, assisted in submitting applications to carriers to have NEWCo BXA become a licensed appointed agency with those carriers, in order to enable NEWCo BXA to directly compete with and undermine Acrisure's business interest.

46. For example, on March 6, 2026, Defendant Fernanda Sanceau (White) participated in an email chain between DeVone and a managed IT service provider with the subject "From Acrisure to Meriplex," where the service provider and DeVone discussed his imminent departure from Acrisure. Defendant Fernanda Sanceau (White) replied saying, "I've added the correct emails on this so we can all be on the call." The individuals she added included Defendant Marnie Hill (McCall). Upon information and belief, this call concerned setting up an IT system for the nascent NEWCo BXA business.

47.    Defendants began to have meetings separate from Acrisure employees more broadly and with a limited focus on exploiting Acrisure resources to further develop NEWCo BXA while still on Acrisure's payroll.

48.    On March 8, 2026, Defendants Austin Devone, Marnie Hill (McCall), and Fernanda Sanceau (White) all coordinated to have a "broker meeting Wednesday." Defendant Marnie Hill (McCall) clarified whether it was for everyone "[o]r just us."

49.    Later that morning, Defendant Marnie Hill (McCall) sent the email to schedule the meeting at the "BXA office" and included multiple Acrisure employees including Defendants Nicolas Cifani, Austin Devone, Fernanda Sanceau (White), and Anthony Cifani.

50.    On March 8, 2026, Defendant Austin Devone shared his vision for NEWCo BXA with DeVone to directly compete with and undermine Acrisure. Defendant Austin Devone provided ideas for the name of the NEWCo BXA and stated that "BXA Global sounds the most credible, scalable, and international." He added that this company name would be the "[b]est for a parent company, sounds established, international, and bigger than one market."

51.    The following day, Defendant Austin Devone continued to undermine Acrisure's interests and provided a new logo for NEWCo BXA.

52.    Defendants and other Acrisure employees, using Acrisure email accounts, also reviewed and commented on drafts of the NEWCo BXA website.

53.    On March 16, 2026, Defendant Marnie Hill (McCall) joined Defendant Austin Devone and others on a Microsoft Teams call with the title, "BXA Global," which is the name of the new company they were using Acrisure resources and property to create and develop to compete with Acrisure while still employed by and being paid by Acrisure.

54. On March 17, 2026, Defendant Austin Devone continued to work on NEWCo BXA while being paid by Acrisure. He provided Acrisure employees a multi-point breakdown of improvements to the NEWCo BXA website, instructing details for development such as "instead of 'outgrow your broker' put 'Over 100 Years of Broker Knowledge'" and "BXA Global is delivering the next generation of HR solutions for its clients by doing things differently."

55. Also on March 17, 2026, Defendant Austin Devone emailed Defendants Fernanda Sanceau (White) and Marnie Hill (McCall) an email with the subject "BXA Global Screenshots" that included nearly a dozen photos of the NEWCo BXA website.

### Defendants Anthony Cifani And Nicolas Cifani
### Undermine Acrisure And Attempt To Steal Acrisure's Customers

56. On information and belief, while employed by Acrisure, Defendants Anthony Cifani and Nicolas Cifani participated in a meeting with others associated with NEWCo BXA to encourage an Acrisure customer to transfer business to NEWCo BXA.

57. This encounter was an attempt to coerce the customer and therefore convert Acrisure property and resources for their personal gain and the gain for their likely new employer NEWCo BXA.

### Defendant Julie Ritenour Misappropriates
### Acrisure's Confidential Information To Benefit NEWCo BXA

58. Defendant Julie Ritenour misappropriated Acrisure's confidential information to benefit NEWCo BXA, her likely new employer.

59. On or about April 7, 2026, Defendant Julie Ritenour linked her personal email account to her Acrisure Microsoft OneDrive Account. This generated an email from her Acrisure email address to her personal email address that included a link to the Microsoft OneNote notebooks.

60.    The notebooks contained confidential and proprietary information about Acrisure's customers, including notes about upcoming 2026 policy renewals. This included dozens of sensitive client documents.

61.    The confidential and proprietary customer information contained in these notebooks are Acrisure's valuable property.

62.    On April 8, 2026, Acrisure sent Defendant Julie Ritenour a letter notifying her that she was being placed on "paid non-disciplinary administrative leave pending an investigation" into her misconduct.

## Defendants Are Terminated On May 1, 2026

63.    Defendants were all terminated on May 1, 2026.

64.    Defendants' actions—while employed and paid by Acrisure—are unlawful and go beyond mere preparation to compete, rather Defendants took affirmative steps to undermine and compete with Acrisure. Damages to Acrisure as a result of Defendants' misconduct exceed $75,000.

## FIRST CLAIM
**(Breach Of Contract: Exclusive Agreement Covenant)**
**(All Defendants)**

65.    Acrisure incorporates its allegations contained in the preceding paragraphs as if fully stated herein, except for paragraphs 58-62.

66.    Each Employment Agreement constitutes a valid, enforceable, and binding contract between Acrisure and Defendants, which include enforceable obligations that protect Acrisure's confidential information.

67.    Each Employment Agreement was entered into for valid consideration, including in the form of significant compensation from Acrisure to each Defendant in connection with their employment.

68.    Acrisure performed its obligations under the Employment Agreements.

69.     In connection with Defendants' services to Acrisure, Defendants had access to, and made use of, Acrisure's confidential and proprietary information including, but not limited to, employee information, costs, pricing, customer and vendor lists, customer contracts, sales strategies, marketing strategies, and employee relationships.

70.     The Exclusive Agreement Covenant in the Employment Agreements provides that Defendants will devote their full time and effort to securing business for Acrisure while employed and they will not be involved in any manner with any active insurance agency or other business of a type conducted by Acrisure, or similar enterprise.

71.     On information and belief, at least as early as February 2026, Defendants breached their obligations under the Exclusive Agreement Covenant by assisting in the creation and development of NEWCo BXA, a competing insurance brokerage company, while employed by and being paid by Acrisure.

72.     Defendants breached their obligations under the Exclusive Agreement Covenant by providing services for NEWCo BXA, while employed by Acrisure.

73.     Defendants breached their obligations under the Exclusive Agreement Covenant by assisting in the preparation and securing of BORs to transfer Acrisure customers to NEWCo BXA, while Defendants were employed by and being paid by Acrisure.

74.     Defendants' breaches have directly and proximately caused Acrisure harm, including, but not limited to, (i) the payment of Defendants' salaries since early 2026, which Acrisure paid expecting they would abide by their agreed-upon terms and provide services for Acrisure's exclusive benefit; (ii) the costs of conducting a forensic investigation into and collecting evidence of Defendants' misconduct; (iii) the loss of Acrisure customers; (iv) the loss of goodwill and reputation; and (v) the cost of litigation efforts.

**SECOND CLAIM**
**(Breach Of Duty Of Loyalty)**
**(All Defendants)**

75. Acrisure incorporates its allegations contained in the preceding paragraphs as if fully stated herein, except for paragraphs 58-62.

76. Defendants have breached their duty of loyalty while employed by Acrisure in order to assist in the launch and development of NEWCo BXA, which, on information in belief, will be their putative future employer.

77. Defendants breached their duty of loyalty to Acrisure by soliciting Acrisure customers to move their business to NEWCo BXA while on Acrisure time and using Acrisure office space and/or company-issued equipment, all while being employed by and paid by Acrisure.

78. On information and belief, Defendants also breached their duty of loyalty by soliciting each other and other Acrisure employees' departure from Acrisure to join NEWCo BXA while still employed by and being paid by Acrisure.

79. On information and belief, Defendants began conspiring with others as early as February 2026, while still employed by and being paid by Acrisure, to perform each of those actions in violation of their duties of loyalty to Acrisure. As such, Defendants breached their duty of loyalty to Acrisure.

80. As a result of Defendants' breach of loyalty, Defendants have been unjustly enriched at the expense of Acrisure, and Acrisure is entitled to disgorgement of any and all profits, gains, and other benefits Defendants receive as a result of their unlawful conduct. Acrisure is further entitled to an accounting to determine the full extent of the profits, gains, and other benefits Defendants obtained through his wrongful conduct, including all revenues derived from clients or accounts diverted from Acrisure.

81. As a result of these various violations, Acrisure has had to divert its attention and resources to remedy the Acrisure employees' harm to its business. For

example, Acrisure has had to devote significant resources to its forensic investigation into the extent of the damage caused by the Acrisure employees' conduct.

82. Defendants' breaches of loyalty have directly and proximately caused Acrisure harm, including, but not limited to, (i) the payment of Defendants' salaries since early 2026, which Acrisure paid expecting they would abide by their agreed-upon terms and provide services to Acrisure's exclusive benefit; (ii) the costs of conducting a forensic investigation into and collecting evidence of Defendants' misconduct; (iii) the loss of Acrisure customers; (iv) the loss of goodwill and reputation; and (v) the cost of litigation efforts.

83. In perpetrating the acts described herein, Defendants acted with malice, oppression, and fraud by acting with conscious disregard for their duty to Acrisure, Acrisure's rights, and the foreseeable harm their conduct would cause. Defendants' conduct was intentional, willful, and undertaken to advance their own economic interests and those of NEWCo BXA at Acrisure's expense, thereby warranting an award of punitive damages in an amount sufficient to punish Defendants and deter others from engaging in similar misconduct.

### THIRD CLAIM
**(Conversion)**
**(All Defendants)**

84. Acrisure incorporates its allegations contained in the preceding paragraphs as if fully stated herein, except for paragraphs 58-62.

85. Acrisure has rightful ownership over and a right to possess all its resources and information, including its confidential and proprietary information.

86. Defendants intentionally and substantially exercised their independent domain over Acrisure's rightful property by misappropriating Acrisure resources and information, including its confidential and proprietary information such as client lists and broker of records.

87.    Acrisure did not consent to Defendants' actions and was dispossessed of its right to the exclusive use and possession of the converted resources and information.

88.    Defendants' misconduct actually and proximately caused Acrisure to suffer imminent and actual harm to its business reputation, thousands of dollars in lost wages, and tens of thousands of dollars in lost profits.

89.    As a direct result of Defendants' actions, Acrisure lost control over these resources, continued to pay Defendants under the reasonable assumption that Defendants were working for Acrisure's exclusive benefit, and, critically, lost valuable customers that Acrisure has spent considerable resources to cultivate.

90.    Defendants' conduct was willful and malicious, warranting an award of punitive damages in addition to the full value of the converted property.

## FOURTH CLAIM
### (Breach Of Contract: Nondisclosure Of Confidential Information)
### (Defendant Julie Ritenour)

91.    Acrisure incorporates its allegations contained in the preceding paragraphs as if fully stated herein.

92.    Defendant Julie Ritenour entered into a valid and enforceable Employment Agreement with Acrisure for which Acrisure paid valuable consideration for Defendant Julie Ritenour's services.

93.    Acrisure performed its obligations under Defendant Julie Ritenour's Employment Agreement.

94.    Pursuant to her Employment Agreement, Defendant Julie Ritenour had access to Acrisure's valuable confidential and proprietary information, and she had an obligation to only use this information for limited purposes as a means of her employment with Acrisure.

95.    Acrisure takes reasonable security measures to ensure its confidential and proprietary information is protected and secure.

96.    One such measure is by ensuring that employees, including Defendant Julie Ritenour, agree to specific requirements regarding the use of confidential and proprietary information in employment agreements.  Another is through nondisclosure agreements that prevent Acrisure's confidential and proprietary information, which has independent economic value, from being generally known to the public.

97.    Defendant Julie Ritenour accessed Acrisure's confidential and proprietary information using Acrisure resources and while being paid by Acrisure, and she uploaded this valuable and sensitive information to her personal Google account in breach of her Employment Agreement.

98.    On information and belief, Defendant Julie Ritenour stole Acrisure's confidential and proprietary information for personal gain and to aid NEWCo BXA's development to directly compete with Acrisure.

99.    Defendant Julie Ritenour caused Acrisure to suffer harm.

100.   Defendant Julie Ritenour's breach has directly and proximately caused Acrisure harm, including, but not limited to, (i) the loss of Defendant Julie Ritenour's salary since early 2026; (ii) the costs of conducting a forensic investigation into and collecting evidence of Defendant Julie Ritenour's misconduct; and (iii) the cost of litigation efforts.

## REQUEST FOR RELIEF

WHEREFORE, Acrisure requests that this Court enter the following relief:

A.    Enter a judgment in favor of Acrisure on all causes of action alleged herein;

B.    Award Acrisure compensatory damages in an amount to be determined at trial;

C.    Award Acrisure punitive and exemplary damages in an amount to be determined at trial;

ACRISURE'S COMPLAINT
17

D.    Award Acrisure all ill-gotten gains wrongfully obtained by Defendants as determined in accordance with a full and fair accounting thereof;

E.    Award Acrisure its actual costs, expenses, and attorneys' fees incurred in this lawsuit; and

F.    Grant Acrisure such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Acrisure hereby demands a jury trial on all claims and issues so triable to a jury.


DATED:  May 5, 2026          SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP


By: */s/ Winston P Hsiao*

WINSTON P. HSIAO (SBN 273638)
Winston.hsiao@skadden.com
RYNE C. POSEY (SBN 301981)
ryne.posey@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2000 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (213) 687-5000
Facsimile: (213) 687-5600

Michael S. Hines (BBO #653943) (*pro hac vice forthcoming*)
michael.hines@skadden.com
Christopher G. Clark (663455-MA) (*pro hac vice forthcoming*)
christopher.clark@skadden.com
Catherine A. Fisher (686163-MA) (*pro hac vice forthcoming*)
catherine.fisher@skadden.com
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800

*Attorneys for Plaintiffs*
*Acrisure, LLC and Acrisure of California, LLC*

ACRISURE'S COMPLAINT
18